I want to direct my comments this morning to the Batson issue. Since the California Court of Appeals used the wrong legal standard when it affirmed the trial court's prima facie case analysis, the state court's findings are contrary to firmly established federal law. They're not entitled to deference, and this court may conduct a de novo review. This is a pre-box case, really, isn't it? This precedes, yeah, the California Court of Appeals opinion precedes the box case and therefore is governed by Wade. In any event, this Court need not address the preliminary issue whether a prima facie case has been met because within the meaning of Hernandez, since the trial court moved on and addressed stage 2 and stage 3 of the Batson analysis, this Court can assume that it can move on to those issues without really going back and addressing the prima facie case analysis. Did the state trial judge tell us why the judge was going on? Excuse me, Your Honor? Did the trial judge tell us why the judge went on? Why the what? Why the judge went beyond the first step. Did the judge tell why? Well, the trial judge? Yes. So the trial judge was satisfied that there was no prima facie case made out, right? That's what the trial judge said, yes. Is that the decision that's in front of us? I don't think that is the decision that's in front of us. Because the trial judge went on to conduct a second and, well, albeit a truncated third stage analysis, I think that this, and because the trial judge used the wrong standard of review. So if the trial judge was right, his prima facie decision, we still reverse him because he's wrong on step 2 or 3? Well, the court of appeal used a strong likelihood standard, legal standard, which was incorrect. So the trial judge's decision is not entitled to deference. And this court conducted de novo review of the entire Batson claim. So that includes a de novo review of the prima facie determination. Isn't that right? I don't think this court, I think because he went on to do what he did, the trial judge, because he went on and asked the prosecutor for his reasons, and then in a pro forma manner accepted those reasons, I think we can accept, under Hernandez, I don't think, I think we can move beyond the decision. What language in Hernandez are you relying upon to support your argument that if a court makes a ruling to complete the record, then that precludes review of the prima facie finding? Well, I'm reading footnote number 1 on page 2 of the reply brief. Footnote 6 of Hernandez? Footnote 6. Yeah. At page 359, we need not address the preliminary issue of whether Collins made a prima facie showing, because the trial court ruled on the ultimate question of intentional discrimination under steps 2 and 3 of the Batson analysis. In any event, I will address, so I don't think this court need bother with whether a prima facie case was made or not. We can assume that it was because the trial court judge went on and conducted the entire Batson inquiry. Mr. Hernandez, did the court have the same conditional language regarding the prima facie case as was in this case? I'm not sure. Don't you think that's pretty crucial in terms of the reason the trial court in this case went on? The prosecutor, Hernandez, did not wait for the trial court's prima facie case ruling but volunteered the reasons. Are you referring to that distinction? Well, I'm asking you whether or not that's a distinction between this case and Hernandez that would negate the language that you're relying upon. I don't think so. Why not? I would like to, in order to address that question, I'd like to go back and argue then why I believe a prima facie case was made by the trial court. In this case, I think that we have two challenges of two black jurors, and we have the first challenge was demonstrably undermined by the record. It was demonstrably undermined by the record. The prosecutors reasoned for the challenge. Both the jurors were completely well qualified. They were both married. They both had children. They both had stable jobs. There was no red flags whatsoever in dismissing either of these jurors. If the trial judge maybe had doubted whether a prima facie case had been made after the challenge of the first juror, certainly after the challenge of the second juror who was aptly qualified, that, I believe, would have been more than sufficient to raise a reasonable inference of racial discrimination. Now, that's not an onerous standard under Batson. That is not an onerous standard, and the courts have said as much. Not being an onerous standard, I think the fact that these two challenges followed each other for no apparent reason, I think was sufficient under the reasonable inference test, and I disagree. I think there's a tremendous difference between a reasonable inference and a strong likelihood. I'm referring to counsel's argument in the previous case. I just can't see how the California Supreme Court has equated reasonable inference with strong likelihood. That, to me, is a non sequitur. So, counsel, you're resting your prima facie case on the fact that two African-American men were challenged. Is that your prima facie case? One woman and one man. Two African-Americans and one woman. Right. And there was nothing at all in any of their voir dire answers that would have raised any sort of red flag. What about the observations the prosecutor said he made of the second structure? Of the second? Of the second structure. The woman who... The loner? The loner. The loner? Yeah. So now we're moving to the third stage of the Batson inquiry, the reasons for the challenge. Well, you just said there was nothing in the voir dire that disclosed anything. Right. And I want to find out what there was that prompted the prosecutor, if there was anything, to act as he did. All right. Well, I would step back. Before answering that directly, I'd step back and say that the first juror that was struck, the prosecutor mischaracterized the record. He said that the prospective juror S had indicated that his brother had been convicted of a drug crime. That's patently false. And the record shows that. So that should have raised the attention, intensified the trial court's focus on whether a prima facie case had been made. Then when the second challenge came, prospective juror B, the prosecutor said, well, in the hallway I watched her and she appeared to be a loner. Well, the defense counsel immediately controverted that and said I watched her in the courtroom and her responses were normal. She acted in an appropriate fashion. She responded. She was animated. At that point, after the first challenge was presumably contrary to the record, at that point, based on the prosecutor's challenge, based on his observations in the hallway, you would think that the trial court would have jumped in at that point and offered its own reflections about. Of course, the trial judge was in the courtroom and had every opportunity to observe that juror while in the courtroom. He may not have been in the hallway. I say the trial judge may not have been in the hallway. That's true. But the defense counsel was in the courtroom and so was the judge. And they could have weighed, the trial judge certainly could have weighed in on the demeanor of prospective juror B. I think by that point, we certainly have an inference, a reasonable inference of racial motivation here. By the second challenge. Counsel, before we get to that, I'd like to address the prima facie showing because we only get to the argument you're making if we disagree regarding the prima facie showing. And in that regard, what do you do with our case, United States v. Wills, where we say that a peremptory challenge to only members of a similar racial group is not sufficient for a pattern? If two people are of a certain ethnic group are excluded, that's not sufficient to establish a prima facie case. That's what we said in Wills. What do you do with that language? Wills says if only two people? Wills says a peremptory challenge to only members of a similar racial group on the veneer does not constitute a pattern of exclusion sufficient to establish a prima facie case. Well, my understanding of the prima facie case inquiry is the circumstances surrounding the prosecution's two challenges are what needs to be viewed and looked at. Just the challenge itself is not enough. You have to look at it in context with the other people who were on the panel, the other people who were in the veneer. So what are the others? Well, in terms of a prima facie case, when you're looking at just, you were just giving us that two people of African American ethnicity were challenged. And it appears that Wills says that's not enough for making a prima facie case. You have to give us something else in terms of the numbers in the pool or the other numbers that were excluded. What do we have in the record regarding that? Well, I think that I don't agree with Wills. I don't see how Wills lines up with evaluating the circumstances around the challenges. I mean, it sounds like Wills is looking at just statistics, just numbers. Well, if two people are challenged, that's not enough. Where do the circumstances surrounding the challenges come in? In this case. Before we get to the part where the court had the prosecution to put its statements on the record regarding the reasons for the challenges, what did you have before that to establish a prima facie case? I think the fact that the, I mean, just based on the challenges alone. When the challenge was made, what was the evidence in the record that supported the challenge to make a prima facie case? I would say the answers on Vordar. The answers on Vordar that these two jurors were completely qualified and showed no indication that they would be biased in any way. So basically, they were stricken despite their answers on Vordar was your prima facie case? Well, yeah. If you want, I would say yes, Your Honor. If we're reaching that inquiry to just after the challenges were made. There were apparently two African-Americans left on the jury. Three. Three after that. OK. Only, but one challenge. How many other jurors were challenged? How many parameters? I think the prosecution challenged 10 and the defense challenged 16, made 16 peremptory challenges. They challenged 10. Three of those challenges were of, no, two. They used 10, so 20% of their challenges were used against African-Americans. But we know if but one challenge is racially motivated, Batson is violated. Oh, I understand. I understand. I'm just looking at it from a statistical point of view. It's hard for me to understand how we can rely entirely on statistics when you're trying to raise a reasonable inference of racial discrimination. I think intuition does play a role. It's got to play a role. How does one evaluate an inference without using intuition? If the statistics were greatly, greatly skewed, that would that would be. Yeah, that would be. They're not here. Yeah, that might be controlling if they were extraordinary. But in most cases, they're not. In most cases, they're not. And that's why the reasonable inference standard is so important to guarantee ensuring this constitutional guarantee. If we were on direct review, that I would agree with you. But we're at habeas at this point with the deference. Oh, we were in de novo because of the. We're de novo. We're de novo because of the wrong standard. The California Court of Appeals decision preceded Batson by almost two years. So California had not, you know, tried to equate strong likelihood with reasonable inference. I want to explore with you a minute or two. Your idea that because the trial judge went to steps two and three, that we can review those even if we think he was right on step one. I'm an old trial judge. I was a state court trial judge for 10 years and the United States district judge for 10 years. And I'm going to tell you, when you're sitting in that seat, as Judge Robinson knows, the instinct for self-preservation gets pretty strong. And you're going to protect the record any way you can. And so I sympathize with this trial judge who said, you haven't you haven't crossed the first hurdle here. But if I'm wrong about that, I don't want to I don't want to bounce back for that purpose. We're going to go on and analyze it further. And what was wrong with that? Well, did that mean he gave away his ruling? Well, I would like to quote then the Tolbert dissent about the necessity of allowing a reasonable inference standard to determine or at least to open the inquiry about whether there's been a racially motivated challenge. They say the majority puts the proverbial cart before the horse. We are not concerned here with the trial court's ultimate finding as to intentional discrimination in the jury selection process, which clearly would be entitled to deference under Hernandez v. New York. Rather, we deal with the threshold question of whether the defendant has raised an inference of discrimination sufficient to shift the burden to the prosecutor to articulate a neutral explanation for the peremptory strike. By transforming this threshold question into an intentional inquiry and thereby merging the first and third prongs of the Batson standard, the majority has, as a practical matter, insulated from review a trial court's decision to reject a Batson challenge. So here are we going to insulate from review what happened here? The trial court used a strong likelihood standard to immediately deny the motion, but then went ahead and asked the prosecutor for reasons and then giving this court a chance to look at whether there, in fact, was racially motivated challenges. Counsel, you cited a dissent to persuade us toward that approach. Do you have any case where there is a majority of a court that followed that approach? No, I do not. Other than the footnote in Hernandez, which I think was a little different than you articulated for us. I think Hernandez turned on the fact that the trial court never made a ruling on a prima facie issue. Isn't that true? I don't know whether they made a ruling or not. Right. That's what I think the difference is. Let me ask you before you close your argument, are you conceding that the ineffective assistance of counsel claims on the part of the trial and the appellate counsel are not well taken? Are you conceding that? Not at all, Your Honor. Not at all, Your Honor. Could you just address those briefly? Because I thought the first was procedurally barred and the second was not exhausted. I've addressed that in my brief and I'll submit on that. Okay. So you stand on your argument? I'll stand on the arguments in the brief. I don't concede anything in that regard. Okay. Thank you. Deputy Attorney General Russell A. Lehman again on behalf of the Respondent. May it please the Court. The first issue is again what the standard is. Frankly, I put much more thought into this between the brief and today, but it's Respondent's position that this Court can depart or look at weight again in light of the new authority represented by Johnson. I went through sort of my argument in that regard that they're really the same thing as the Supreme Court has indicated in Johnson. I was going to not reiterate that here since I just did so, and also to just say that on that point that to the extent this Court feels that it is bound by Wade, that they do so begrudgingly and possibly urge a reexamination by the wider en banc court in that regard. In any event, again, just like the last case, there was no prima facie showing whether reviewed de novo or deferentially. I did want to touch also on this whole question of mootness that the Court was questioning counsel about, and it remains our position that Hernandez does nothing to moot the prima facie determination here under the circumstances presented, as the Court pointed out. In Hernandez, what happened is the defendant made his Batson motion, and before the Court could make a prima facie determination, the prosecutor immediately starts blurting out his justifications for the strikes, and the Court then ruled on those justifications. There was no prima facie finding in Hernandez, and therefore the Court quite reasonably found that that had been mooted. Here, as found by the State Court and as held by the California Supreme Court in Turner, the situation is much different when you have a trial who here is conscientiously trying to make as complete a record as it possibly can, and it makes an express finding of no prima facie case, and it then, as I said, conscientiously goes on to make further determinations so that there will be a complete record for review by a court such as this. In fact, it would be well, and counsel apologized to Collins in support of this mootness question, but if one examines Collins, one sees that there the motion was made, which was supported by a lot more than this one was, and in that case the trial court actually made an express finding that the prima facie case had been established. Mr. Lehman, because this is, as I understand it, a pre-box case, doesn't it mean that we put ourselves in the shoes of the trial court and decide whether or not there was a prima facie case made? Exactly. Well, in the event, again, in the event that you find way of controlling, yes, that's exactly what we want you to do, and therefore the question has not been mooted, that the prima facie case ruling has not been mooted. What can we do if we get a case where a trial judge says, look, you haven't made a prima facie case. All you've got is that this prosecutor struck one African-American from the jury. But to protect your record, I'm going to go ahead. And then the prosecutor gets up and says, well, the reason I struck him is I don't like blacks. Then we should say that there's no prima facie case. So there was no violation. Wouldn't any self-respecting trial judge reverse herself? I would think so. I would think under those circumstances and hopefully under those circumstances, we'd never make it. You see, that's what bothers me as a matter of analysis and saying that we should blind ourselves from even though I know what the judge was doing. It's clear he thought there was a prima facie case. But should we bind ourselves to everything that follows in the record? I think I think with all this. Well, I think with all respect to that, in the unlikely event that hypothetical were to materialize. I think that I think that you probably would have the motion granted and have a new new veneer based on that bold admission and probably some sort of hopefully pretty healthy discipline on that on that prosecutor. I. It's an interesting question. I think, frankly, that the analysis should follow the step three inquiry. But I don't know. I mean, I can understand how relief is to prevent. Sort of frivolous detours. In other words, you have to show some sort of a prima facie case because to go into this whole thing is a disruption in the delay of the trial process and everything. So they're going to make some sort of an initial showing required. But now the thing is before us. It's day noble. Why? Why wouldn't we look at the whole record to decide? The ultimate question in Batson is whether somebody was was stricken from a jury for racially discriminatory reasons. We got we got what's in the record there. We could we could decide that day. Noble may well be. I mean, I know part of your argument is that, well, even if you look at the whole record, it's not there. It certainly is. But limiting it to that, to that record, getting back to that first step, it is for that purpose. But simply because the court then conscientiously goes on to take those reasons and rule on them doesn't mean that the prima facie showing was met. And frankly, I'm getting back to your hypothetical. I think at that point, arguably, and I don't know if, you know, you start having to kind of get in between the steps as they're laid out. But but I think at that point, you know, a counsel counsel for the defendant could very renew his motion at that point and use that statement as part of his own prima facie case if that were ever to materialize or that the court could reconsider. All we have to do then is look at the whole record to decide whether there is a prima facie case here. Well, no, I would I would urge that that's not what this court should do. This court should apply Batson, which says that the burden is on the movement to first meet his prima facie case. And until he does that, we don't look at the justifications or the court's ruling on their reasonableness. Did the trial judge have the advantage of the of all the facts when when the prima facie ruling was made? Now, the only facts that the trial judge had were what it had were that. And that was what was pointed out by defendants counsel, which was that the stricken juror was African-American like defendant. And that's basically it. The only other showing is pointed to by counsel was this whole notion that and there was no other reason to throw them. Well, if the court and counsel are doing their job on exercising their for cause challenges, that's always going to be the case. If there's some sort of clearing, glaring bias that's come out, then the juror is going to be excusable for cause. It's always going to be the case that there isn't some other thing. And really, the only thing they showed was that he's African-American. I'm African-American. And this court's jurisprudence, the Supreme Court's jurisprudence and state jurisprudence are all in accord that that's not enough. I did. I guess the court wants to move beyond this whole mootness. But one other thing I did want to point out is that as this court was or as justice or as Judge Hanson was sort of suggesting that, frankly, it's our decision that this kind of conscientiousness should be encouraged, not inhibited. The court went out of its way to make as best a record as it could. This court in those instances where it has reversed or granted relentless behavior in situations where it rules that, in fact, a crime of facial case was established, what happens is it gets remanded for an evidentiary hearing. But in federal court where a prosecutor is called years afterwards to come up with some sort of justification and therefore take a lot of resources at that hearing for the district court to make further rulings. So trial courts should be encouraged to make this kind of record, not inhibited. And by telling them that, well, too bad, any time you do that and you go on to reach the actual reasons, it's going to be mooted is only going to inhibit that. Also, there's this notion of insulating the ruling. Well, the only insulation of the ruling or attempts to do that are by the other side, which is telling you not to look at the crime of facial. In any event, there was really nothing more than race shown here, and that's all there was. Well, and again, while not strictly dispositive, it is significant that three jurors sat, that the prosecutor accepted the jury many times prior to striking Ms. B with her and other African-Americans on the panel. And when it finally came to striking her, the prosecutor explained, A, that she did behave as a loner. And also it pointed out in a reason that's been upheld by this court itself, that at that point the defense had exercised a lot more peremptories than the prosecutor had, and he had reasonably gotten to the point where, at that point, based on the composition, juror B was what he considered to be the least favorable, and he therefore excused her. And also, as in Williams v. Woodford, the showing here by petitioner, he absolutely failed to make any note of the number of African-Americans in the veneer, how big the lardoneer was, or make any of those showings. Oh, there's also the suggestion that the prosecutor somehow misrepresented the reason that he used for throwing juror S, or excusing juror S. And as I've shown in footnote 5 on page 42 of my brief, the prosecutor was very clear and wasn't trying to blow out of proportion what was said. In fact, the prosecutor granted that although he didn't go so far as to say the brother had suffered a conviction, there was plainly some sort of negative drug event there where he might sympathize with the defendant. And that's been upheld by this court and many others as a proper determination. There's some of the suggestion that the court didn't actually make a step three determination, and it plainly did based on the record, to hold otherwise as contrary to this court's authority in cases such as U.S. v. Gillen, where the court says, look, all the court has to do is rule on the motion. It doesn't have to make any further findings. And as shown, each of those questions was, each of those reasons has been upheld by other courts. And there was also a complaint during counsel's opening argument that, you know, once the explanations were made, and once the argument was given by defendant's counsel, that the court didn't make any finding. Well, the court did make a finding. It ruled in favor of the prosecution, and it found the reason perfectly adequate. So it made a finding that, in fact, it was genuine. I was going to touch briefly on the ineffective assistance claim, and I was only to reiterate that this claim was only raised in the reply brief. The California Court of Appeal at the procedural bar, one that this court itself imposes under the same circumstances, that the silent denial of the petition for review, when he also raised the claim, be read through to the procedural bar. There's been absolutely no showing of cause and prejudice. And, in fact, on the first question, in Helen's brief, he sort of says, well, I raised all these other things that were almost like it, but all he does in doing so is establish that this claim was never raised in any proper context. It's barred. There is no cause and prejudice, and certainly we're not dealing with the miscarriage of justice with a conviction of someone actually innocent of a crime. As to should this court reach the merits, there's neither the prong one in effectiveness nor prejudice. And, in fact, the court could probably look at prejudice first and only at prejudice, because here, as I pointed out, and as the Court of Appeal also expressly found in a finding of fact, which is also entitled to a presumption of correctness until overcome by clear and convincing evidence. Oh, by the way, the step three determinations on the Wheel Ambassador, it also appears to be not even contested, nor should it be, that that itself is a factual determination, which is entitled to the presumption of correctness, that that itself is a merits adjudication, which is entitled to the deference of the AEDPA, whether or not the first step prima facie case is, and that here there's been no overcoming of that presumption, as there arguably was in Collins, and I think I've hopefully served to distinguish Collins on many points, such that it's not applicable. Also, I note that although the two-judge majority certainly controls in College, it's interesting to note that between Judge Hall's very well-reasoned dissent in that case and the dissent of the five justices from denial of en banc review, that at least six members of this Court strongly disagree with the analysis in that case. And finally, as I pointed out and as I said, as the State Court of Appeal made a factual finding, that here Petitioner actually testified that he goes to his cocaine dealer, to whose he's indebted, cocaine dealer says, you're going to get out of Dutch with me by doing the following. I'm going to give you this fake license. You're going to take it, along with these bogus checks, to the computer store, and you're going to buy this computer on my behalf, then you're debt-free. So even by his own testimony, he clearly understood what he was doing, and he had the intent to defraud. So plainly, any intoxication did not negate that intent, and therefore he wasn't prejudiced, and therefore this Court probably does not even need to reach the first question of ineffectiveness or competence of counsel. But in any event, as the cases suggest here, by putting that before the jury, by making it plain that that was the basis of the defense, and by arguing it and putting it before the jury, counsel complied with any effectiveness bar, not in the procedural bar sense, but bar in the sense of setting the floor for competent counsel. Well, then I suppose from your argument, in your view, it would follow that his appellate counsel claim also could show no prejudice. I'm sorry. Well, he has a he has a claim of ineffective assistance of appellate counsel for defaulting that ineffective assistance of trial counsel. If I understand, I don't know that he does. I thought that he did. Well, I'll look again. I will, too, Your Honor. I thought that was an explanation for his. That was never offered as an explanation for cause for the default, and which it has to be, as he cited authority to that effect. But in any event, I thought the claim was, was that counsel failed to raise. I suppose you couldn't prejudice. It would follow from your argument, if the default couldn't be prejudicial, that the ineffectiveness in causing the default could also not be. As Your Honor just said, that it dawned on me that that is exactly the case, logically and necessarily the case, that this Court would never need to reach any question of ineffectiveness of appellate counsel, because unless ineffectiveness of appellate counsel could be established in the first instance, you would never need to reach that further question. That's your argument, it seems. I think that's right. And I think I've probably elaborated on everything else in the brief just as much as I could. Do you hear unless there's further questions? Help me with the facts here. There's only one. There's only one conviction in front of us on this appeal. A single case. There's there's multiple counts, but a single judgment. Yes. But there's only one count that's being appealed, right? My understanding is that he seeks relief on the judgment in total. He was convicted of, I could tell the Honor the specific counts if you like, but it's my understanding that he's attacking the judgment in total. And, in fact, you know, if he succeeds on the Weaver claim, obviously that would take you back to, you know, a complete. But sentence was state on this count, right? I'm going to have to look. I don't know that that's the case. Maybe I've got my cases mixed up this morning. Okay. I think you might. And I'm not familiar with that distinction in this case. Disregard my question. Thank you. I'd be happy to submit if there's no further questions. Thank you, counsel. I think your Honor's point was really well taken. I think that if a trial court is allowed to deny that a prima facie case has been made and then go ahead and ask the prosecutor for reasons and then allow the prosecutor to give reasons that are contrary to the record or militate against his credibility, I think we've put the cart before the horse. And so I don't think that Hernandez need be controlling, and that's the facts of Hernandez. I mean, here, so any trial, that means that any trial judge could just say, well, no prima facie case has been met, then go ahead and try to insulate from review. By doing that, insulates himself from further review. Then the prosecutor comes and puts reasons on the record that are wholly unacceptable or contrary to the record. Does this court want to do that? Shift the whole bats and analysis into the arms of the trial judge? Are we going to ignore the record in this case based on the trial judge's statement? And then I would like to address more specifically your question about, you know, what was in the record that would have justified a reasonable inference conclusion from the prima facie case analysis. And then point specifically to the voir dire answers of the two jurors. Oh, I want to mention one thing, preface that with one thing. The defense counsel allowed three, did not make Wheeler bats and challenges with respect to three black jurors, African-American jurors that were seated on the jury, which means that he wasn't doing this frivolously. He obviously felt there were good reasons. There was no reason for those jurors to be struck, and he didn't say anything. With these, he did. And I think that's something to take into consideration in terms of whether a prima facie case has been met. The other thing is this. Juror S answered the question about drugs and his family with the response that he had a brother that 15 or 20 years ago had been involved in some drug incident, 15 or 20 years ago. That's a long time, which the prosecutor then said, well, indicated that he'd been convicted. But nevertheless, let's just look the answers to the voir dire questions. Counsel, your time has expired. But I do want to ask you whether or not you asserted ineffective assistance of appellate counsel in your brief. No, because he did not do it. He did not. He did not raise that issue. Okay. That was not raised in the brief on appeal. No. I don't believe. Counsel addressed the third stage inquiry. I didn't. I wasn't allowed to get to that point because we were discussing the prima facie case analysis. We understand your argument, though. Okay. Can I make a few more points about the voir dire answers? You need to wrap up because you've exceeded your time. Okay. I would just like to direct the court to the fact that the loaner, prospective juror S, who was not a loaner, she had previously, she stated during her voir dire that she had previously been on a jury and voted with the majority. And then, so I think that's really important in terms of supporting the prima facie case, the reasonable inference. All right. Counsel, we understand your argument. The case just argued is submitted. Thank you, counsel, for your argument. Okay.
judges: Canby, Hansen, Rawlinson